IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAMTA GUPTA,** | |
| Plaintiff, | CIVIL ACTION 2:22-cv-1011 |
| v. | |
| | COMPLAINT |
| **ALLEGHENY HEALTH NETWORK,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Mamta Gupta, by and through undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendant and states as follows:

### PROCEDURAL AND ADMINISTRATIVE REMEDIES

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about November 3, 2021, Plaintiff dual-filed a charge with the Pittsburgh office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging discrimination based on national origin, gender, age, and retaliation.[1] *See* EEOC Charge of Discrimination, attached as Exhibit 1.

---

[1] Plaintiff's claims under the PHRA are referenced for notice purposes. Plaintiff is required to wait one full year from the time of filing the dual-filed charge to bring claims under the PHRA. Plaintiff must

4.The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued.  *See* Exhibit 2.

5.Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

6.Plaintiff Mamta Gupta is a 47-year-old woman from India who was previously employed by Allegheny Health Network. She currently resides in New York state

7.Defendant Allegheny Health Network ("AHN"), upon information and belief, is located at 320 East North Avenue, Pittsburgh, PA 15212

## FACTUAL BACKGROUND

8.Mamta Gupta began her employment at AHN on October 1, 2019 as a Radiology Resident Physician. Dr. Gupta's job duties consisted of reading all radiological studies, which included CT scans, MRIs, X-rays, and ultrasounds; doing pre-procedural work ups for attendings;implementing imaging protocols; and clinical medicine, including weekend and night calls.

9.Dr. Gupta was praised by several attending physicians, both orally and in writing, for her academic achievements at national and international conferences at which she outperformed her peers. For example, at the American Roentgen Ray Society (ARRS) 2020 meeting, Dr. Gupta was an invited oral presenter. In the ARRS 2021 meeting, one of her presentations was awarded a Certificate of Merit.

---

however file her lawsuit in advance of the same because of the date of issuance of her federal right-to-sue letter.

10. Written evaluations by other attending physicians stated that Dr. Gupta possessed good communication skills and a pleasant bedside manner.

11. During her employment with AHN, Dr. Gupta never received any verbal warnings or disciplinary actions. Nearly every evaluation described Dr. Gupta's competency and commendable performance until a fictitious letter of deficiency (LOD) was written, which highlights the workplace discrimination.

12. Despite Dr. Gupta's exceptional performance, she experienced discrimination at AHN on the basis of her national origin, age, and gender.

13. Unlike Dr. Gupta, Charles Li, an American, male, attending physician in Radiology, younger than Dr. Gupta, was not punished regarding a questionable procedure.

14. Dr. Gupta's direct supervisor was the Radiology Residency PD – William Peterson, an American man who is younger than Dr. Gupta. Dr. Peterson, discriminated against Dr. Gupta by not providing her with technological resources equivalent to those of the other radiology residents, who were non-foreign and younger than Dr. Gupta.

15. Dr. Peterson further created a hostile work environment saying that Dr. Gupta should "go back to India" at her age, and that he did not understand her accent, despite her high score on English proficiency examinations.

16. In a single incident where Dr. Gupta and a male resident made a simple scheduling error, only Dr. Gupta was disciplined.

17. Further, an American ultrasound technologist in Obstetrical Medicine, Megan Miller (white), was given preferential treatment when Dr. Gupta voiced her concern about multiple delays in the imaging of emergency patients.

18. Dr. Gupta was concerned about poor patient care, so she emailed Dr. Klepchick. The matter went to the Clinical Competency Committee (CCC). Rather than take corrective action against Megan Miller, the CCC issued a Letter of Deficiency (LOD) against Dr. Gupta, without ever interviewing her.

19. On February 2, 2021, Dr. Peterson, and the associate PD, Matthew Miller, met with Dr. Gupta to discuss the LOD. Dr. Gupta was able to refute each false statement in the LOD.

20. After hearing Dr. Gupta's account, they agreed that Megan Miller, not Dr. Gupta, was at fault. However, Dr. Peterson explained that because the CCC had already issued the LOD, Dr. Gupta was required to sign it. Dr. Gupta complied with her supervisor's instruction.

21. During the February 2, 2021, meeting, Dr. Gupta also complained about discrimination based on national origin. Although she was assured of fair representation going forward, Dr. Gupta was not given the opportunity to advocate for herself at subsequent meetings concerning her employment. Dr. Gupta's verbal rebuttal of the LOD was also ignored.

22. In March 2021, Dr. Gupta again complained of discrimination, this time to Paul Klepchik and Matthew Hartman.

23. When she expressed her intention to complain in writing to Human Resources and the Graduate Medical Education Program, Dr. Hartman warned her to "be quiet, [she had] to decide whether [she wanted] to go through this process or quit."

24. On June 16 , 2021, Dr. Gupta emailed Dr. Reilly, Ms. Maier, Radiology Chair, and attending physicians to request justice after detailing specific events of descrimination against her by the PD.

25. On June 18, 2021, Dr. Gupta emailed Dr. Reilly, Ms. Maier, Dr. Casagranda, and Dr. Mueller about descriminations based on sex and national origin by the PD.

26. Within a few days of the February 2, 2021 meeting, Mamta Gupta began experiencing severe connectivity issues with her work account, hampering her ability to perform.

27. Dr. Gupta attempted to address these technical difficulties, but was told her account could not be fixed. This disparate treatment added to the stressful conditions in the already hostile work environment.

28. In March, 2021, Abdominal Radiology attending physicians were emailed a request to submit evaluations singling out Dr. Gupta. This created additional negative bias.

29. Despite the problems with her work account and hostile work environment, Dr. Gupta continued to perform well, receiving positive verbal feedback from various attendings on a daily basis.

30. However, the PD refused to grant Dr. Gupta access to her written evaluations. This was against hospital and ACGME policy, which disallowed Dr. Gupta, a resident, from addressing any issues.

31. On May 11, 2021, the PD summoned Dr. Gupta to a meeting in the GME office. Without any prior notice, he handed her a termination letter lacking any probationary period.

32. Dr. Gupta was told that she could either resign or be terminated. Dr. Gupta was led to believe that by failing to resign, she risked AHN disseminating false information to damage her career, and chances for future employment as a radiologist in the United States. Dr. Gupta felt she was forced to resign rather than appeal the allegations against her.

33. Fearing for her future career, Dr. Gupta resigned. However, the PD continued to convey false negative reviews of Dr. Gupta's performance, including the circumstances of her constructive discharge with AHN.

34. Dr. Gupta's applications to several programs were rejected because AHN, and the PD in particular, supplied false performance evaluations and alleged that she was terminated while on probation.

35. Dr. Gupta's actual performance evaluations refute these retaliatory falsehoods. She was granted access to review, but not copy, her evaluations only after the forced resignation.

36. Dr. Gupta's position at AHN was filled by a younger (upon information and belief, at least 10 years), white, American man.

## COUNT I
### Violations of 42 U.S.C. § 1981
*Race Discrimination, Hostile Work Environment, and Retaliation*

37. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

38. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

39. Plaintiff had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

40. Plaintiff was an at will employee, which implicates her right to make and enforce contracts.

41. Defendant abridged Plaintiff's right to make and enforce contracts by its discriminatory conduct toward Plaintiff.

42. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges and benefits of her employment with Defendant.

43. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of race.

44. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

45. Defendant's actions altered Plaintiff's work environment.

46. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasonable pereson in like circumstances.

47. This severe and pervasive environment continued throughout Plaintiff's employment.

48. Defendant is liable for its supervisors under respondeat superior.

49. Plaintiff participated in protected conduct. Defendant retaliated against Plaintiff because of his participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

50. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

51. The wrongful acts and conduct of Defendant was done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

52. Plaintiff suffered adverse employment consequences. Specifically, Defendant retaliated against Plaintiff.

53. Plaintiff was forced to resign as a result of Defendant's discriminatory conduct.

54. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq**
*Race and National Origin Discrimination; Gender Discrimination; Retaliation; Hostile Work Environment*

55. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

56. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under Title VII.

57. Defendant is a covered employer under Title VII and employees more than 15 employees.

58. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges and benefits of Plaintiff's employment with Defendant.

59. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of national origin.

60. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

61. Defendant's actions altered Plaintiff's work environment.

62. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasonable person in like circumstances.

63. This severe and pervasive environment continued throughout Plaintiff's employment.

64. Defendant is liable for its supervisors under respondeat superior.

65. Plaintiff participated in protected conduct. Defendant retaliated against Plaintiff because of her participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

66. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

67. The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

68. Plaintiff suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiff.

69. Plaintiff was forced to resign as a result of Defendant's discriminatory conduct.

70. Plaintiff was replaced by a person outside of her protected characteristics, which automatically raises an inference of discrimination.

71. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT III
**Violations of the Age Discrimination in Employment Act, 29. U.S.C. § 621, et seq**
*Age Discrimination; Hostile Work Environment; Retaliation*

72. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

73. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the ADEA.

74. Plaintiff is and was at the time of her termination, over forty years of age, and an individual within the class protected by the ADEA.

75. In discriminating against and harassing Plaintiff because of Plaintiff's age, Defendant violated the ADEA.

76. Defendant's violations were intentional and willful.

77. Liquidated damages are warranted given Defendant's willful violation of the ADEA.

78. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

### COUNT IV
### *Defamation*

79. The communications that Defendant made concerning Plaintiff had a defamatory character.

80. The communications referred to Plaintiff expressly.

81. The communications were published. That is, third parties received the communications. The third parties that received the publications were other hospitals to which Plaintiff applied following her constructive discharge.

82. The hospital to which Plaintiff applied understood the defamatory character of the statements that Defendant made to them.

83. The statements made regarding Plaintiff's employment were false. Plaintiff was not terminated. And Plaintiff performed exceptionally well in her role as a resident.

84. The third-party hospitals understood that the defamatory statement was meant to be applied to Plaintiff. Plaintiff's name was on the references that Defendant disseminated and which contained false information.

85. Plaintiff's reputation and job prospects were harmed. Due to Defendant's conduct, Plaintiff was unable to obtain another residency in her chosen specialty and had to delay her path towards becoming a licensed physician in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a) Declaring the acts and practices complained of herein to be in violation of Section 1981;

b) Enjoining and permanently retraining the violations alleged herein;

c) Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's

pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the PHRA, and the ADEA;

h) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees;

i) A jury trial is demanded on all triable issues in this case; and,

j) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

Dated: July 11, 2022

*/s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law.com

*Counsel for Plaintiff*